### IN

## THE SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF NEW-YORK,

IN JANUARY TERM, 1816, IN THE FORTIETH YEAR OF OUR INDEPEN-
DENCE.

------

## SHORT *against* WILSON AND OTHERS.

THIS was an action of trespass on the case, which was tried at the *Ontario* circuit, in *June*, 1814, before Mr. J. *Van Ness*, and a verdict taken for the plaintiff, subject to the opinion of the court.

The declaration contained four counts, in the three first of which, the plaintiff alleged an injury to his reversion in 100 acres of land, in lot No. 53., in township No. 11., in the town money on the 23d of *August*, 1799, &c. ; and agreed that, if he failed in performance, A. was to be making a conveyance,) *in trust*, to convey the premises to M., or his appointee, when he should have made the payments and performed the covenants stipulated in his contract.

A., by B., his attorney, covenanted, the 23d of *September*, 1799, to convey part of the lot to S., who paid part of the purchase to B., and the residue to A., who conveyed the premises to S., by deed, dated 14th of *November*, 1801.

M. having failed to perform his contract, B , by a deed, (dated the 29th of *September*, 1813, and executed by vir-tue of a power from A., dated the 16th of *December*, 1799,) reciting that A. had assigned the contract of M. to C., in trust, for the executors of G., conveyed the premises in question to C. It was *held*, that S. had a good title, under his deed, notwithstanding the previous contract with M., and the deed to B. ; as M. having failed to per-form his contract, the *trust* in B. was at an end, and resulted to A., and B. had no authority to execute a deed afterwards, without a new power.

That A. and B. having, subsequently to the deed of trust, made the agreement with S., which had been carried into effect, it was a revocation of the *trust*, as it regarded S., and that the subsequent deed to C. was inoperative on the ground of the adverse possession of S.

An action on the case, in the nature of waste, lies against the assignee of a lessee.

*Side note:* A., by his deed, dated *January* 16th, 1799, con-veyed a lot of land to B., (re-citing a contract of purchase be-tween A. and M., dated *Au-gust* 23d, 1797, by which M. co-venanted to pay one fourth of the purchase the purchase

of *Phelps*, by digging and carrying away *gypsum*: the fourth was a count in *trover*. The defendant pleaded the general issue, and several special pleas, denying the title, and alleging a title out of the plaintiff.

The original title to the land was in *Oliver Phelps*, under whom both parties claimed; and the plaintiff produced a deed from *Phelps*, for the premises mentioned in the declaration, dated the 14th of *November*, 1801, and acknowledged and recorded the 23d of *July*, 1803, with a release of dower from the wife of *Phelps* endorsed thereon, and acknowledged the 15th of *June*, 1804. *Phelps*, by his attorney, *P. B. Porter*, had previously agreed, by articles of agreement, dated the 22d of *September*, 1799, to convey the premises to the plaintiff. On the articles was endorsed a receipt by *Augustus Porter*, for part of the consideration money, and a receipt in full, from *Phelps*, for the residue. The plaintiff began to occupy the lot 14 or 15 years ago, and hired one *Nicholas Spon* to clear some part of it, who went into possession in the spring of 1802, under a lease from the plaintiff, and continued in possession until *December*, 1813, when he assigned his right to the defendants. The lease contained no permission to dig *gypsum;* and it was proved that the defendants had dug gypsum, with a knowledge of the plaintiff's claim, and after having been forbid by him.

The defendants gave in evidence a deed from *Oliver Phelps* to *Augustus* and *Peter B. Porter*, dated *July* 16th, 1799, and recorded on the 14th of *March*, 1800, of several lots, in which the premises in question, stated to have been sold to *Abraham Van Duzen* and *Adam Miller*, were included, in trust, to convey the said lots to the respective purchasers thereof, or their appointees, when they should have fulfilled the conditions, and made the payments, stipulated in certain agreements or covenants theretofore made between them, the said purchasers, and *Phelps*.

*Adam Miller* having failed in the performance of his agreement, *Augustus* and *Peter B. Porter*, by deed, dated *September* 29th, 1813, reciting, among other things, that *Phelps* had assigned *Miller's* agreement to *Brooks*, the party of the second part, in trust for the executors of *Nathaniel Gorham*, deceased, and directed the land to be held for the benefit of the party of the second part, and conveyed the premises in question to *Peter C. Brooks*, excepting fifty acres out of the northwest corner thereof, sold by *Phelps* to *Abraham Van Duzen*. The last-mentioned deed was executed by *Augustus* and *Peter B. Porter*, by

virtue of a power of attorney from *Phelps* to them, dated *December* 16th, 1799.

The power of attorney recited, that whereas *Phelps* had covenanted by indenture with *Rebecca Gorham, Nathaniel Gorham,* and *John Call,* and as it was his intention to appoint an agent to transfer and deliver for him such security as was in the said indenture covenanted, and for the purposes, and in the manner, therein stipulated, he, therefore, appointed *Peter B.* and *Augustus Porter,* his attorneys, to transfer and deliver to the said administrators, or to any person whom they might appoint, bonds and notes of the description in said indenture, together with the mortgages or other collateral securities given to secure the same, to the amount of 12,500 dollars, in the possession of the said attorneys; and if it should be necessary, in order to complete the said sum, he empowered them to convey, by sufficient warranty deeds, all such lots of land as had been sold to settlers, for which they had given their bonds or notes, they holding articles of agreement for the conveyance of such lands, in case such bonds or notes should be assigned to the said administrators, or any person by them appointed; and revoking any conveyance in trust for said settlers made to *Peter B.* and *Augustus Porter,* of lands to which said bonds or notes may relate. To the power was annexed a list or schedule of sundry lands therein stated to have been assigned by *Phelps* to *Peter C. Brooks,* among which was *Adam Miller's* bond, dated *August* 23d, 1797, for 3,334 dollars and 12 cents. The assignment to *Brooks* was in trust for the heirs or administrators of *Nathaniel Gorham.* The agreement between *Phelps* and *Miller,* for the conveyance of the premises in question, and other lands, was, also, dated the 23d of *August,* 1797, and was assigned in the name of *Phelps,* by his said attorneys, to *Brooks,* in trust for the same persons, with directions to *P. B.* and *A. Porter,* to hold the land mentioned in the agreement, in trust, for *Brooks.*

By the agreement, *Miller* was to complete all his payments by the 23d of *August,* 1802, according to the condition of his bond, and a deed to be given on or before the 1st of *September,* 1802 ; and it was expressly provided that, if *Miller* failed to perform any, or either of the covenants, on his part, *Phelps* was, in such case, to be fully discharged and acquitted from making the conveyance.

In 1799 *Miller* took possession of the premises agreed to be conveyed to him, and after six or eight years, being prosecuted

by *Peter C. Brooks*, on the bond above mentioned, and being unable to pay the amount due thereon, for which a judgment had been obtained, he abandoned the whole of the land mentioned in the articles. *Miller* had made no improvements on that part of the lot claimed by the plaintiff, nor had he made the payments according to his covenant. On the 13th of *August*, 1814, *Brooks* conveyed the premises in question to the defendants, *Wilson* and *M'Neil;* the defendants having been permitted, in *December*, 1813, to go on the lands and improve them.

*Henry*, for the plaintiff.

*Van Vechten*, contra.

THOMPSON, J., delivered the opinion of the court.

The premises in question are one hundred acres of land, at the southwest corner of lot No. 53, township No. 11, in the town of *Phelps*. It was admitted, on the trial, that the title was once duly vested in *Oliver Phelps*, from whom the plaintiff derived his title, by deed, bearing date the 14th of *November*, 1801. A previous contract for the land had, however, been made by the plaintiff with *Peter B. Porter*, as attorney for *Oliver Phelps*. The articles of agreement bear date the 22d of *September*, 1799. The power of attorney to *Porter* was not produced, but the case furnishes abundant evidence that *Phelps* ratified the act, and adopted it as his own; for he received part of the consideration money, and executed a deed pursuant to the contract. There would, therefore, be no doubt of the plaintiff's title to the lot, if it were not for the previous contract, made with *Adam Miller*, bearing date the 23d of *August*, 1797, and the deed, in trust, given by *Phelps* to *Peter B.* and *Augustus Porter*, bearing date the 16th of *January*, 1799. A little examination, however, will show, that neither of these instruments will form any objection to the plaintiff's title to the land. By the contract with *Miller*, the deed was to be given in 1802; the consideration money to be paid by instalments, all payable before the deed was to be given; and the contract expressly provides, that if *Miller* should fail in the performance of any of the covenants on his part, then *Oliver Phelps* was to be fully discharged and acquitted from making the conveyance. By these articles, the first payment fell due the 23d of *August*, 1799; *Miller* failed in performing his contract; this appears from nu-

merous parts of the case, and is expressly so recited in the deed from *P. B.* and *A. Porter* to *Brooks*, under which the defendants claim. *Miller* having failed in the performance of his contract, *Phelps* had, undoubtedly, a right to avail himself of the forfeiture, according to the provisions in the articles of agreement. There can be no stronger evidence of his intending so to do, than the sale made of the same land a short time thereafter, (22d of *September*, 1799,) to the plaintiff in this cause.

The deed, in trust, given by *Phelps* to *P. B.* and *A. Porter*, would form no impediment to the contract made with the plaintiff, for it was made through the agency, and with the assent, of all parties to the deed in trust, both principal and attorneys, the *cestuy que trust* and trustees. *Peter B. Porter* made and signed the contract, *Augustus* received part of the consideration money, and *Phelps* the residue; and he also consummated the title, by giving the deed pursuant to the contract. Here, then, was a revocation of the trust, so far as it related to this land, with the assent and concurrence of the trustees, and *cestuy que trust.* Besides, the trustees had not, under their deed, any authority to execute the trust. This deed refers, generally, to the contracts that had been made by *Phelps;* and the trustees were only directed to give deeds to such purchasers as should fulfil the conditions and payments, in their respective articles of agreement stipulated, according to the tenor and effect of such articles. *Miller* did not fulfil his contract, and the trust, so far as it respected him, was at an end, and resulted to *Phelps;* (1 *Cruise's Dig.* 475. 2 *Fonb. B.* 2. ch. 5. s. 1. ;) and the trustees had no authority to give a deed without some new power or direction from the *cestuy que trust.* Such, also, must have been the understanding of all parties at that time; for no deed was executed under these articles until *September*, 1813, when it was given to *Peter C. Brooks.* Nor can the power of attorney, given by *Phelps* to *P. B.* and *A. Porter*, on the 16th of *December*, 1799, in any manner impeach the plaintiff's title ; that was a power to transfer certain lands, and articles of agreement, to secure to *Rebecca Gorham*, and others, the sum of 12,500 dollars, and the bond and articles of agreement with *Miller* were assigned to *Brooks*, in trust, to be paid to the heirs or administrators of *Nathaniel Gorham*, when collected. This power is dated after the contract made with the plaintiff for the land in question, and could not prejudice his rights. *Miller's* bond and articles were assigned, among considerable other property, in trust, for

ALBANY,
January, 1816.
AFRICAN SOC.
v.
VARICK.

the heirs or administrators of *Gorham;* and nothing appears to have been done under the assignment for seven or eight years afterwards, when *Miller* was prosecuted upon the bond, and, being unable to pay, abandoned his whole contract, which was for much more land than what is now in question; the assignment, therefore, to *Brooks,* was not absolutely inconsistent with the sale of the one hundred acres to the plaintiff. It may be operative and effectual as to the residue of the land included in *Miller's* contract. The defendants must fail on the issue, which alleges the title to be in *Brooks,* for when the deed was given to him, there was clearly an adverse possession in *Spon,* who held under the plaintiff. I am, therefore, satisfied that the legal title to the land in question is in the plaintiff, and his claim to recover is fortified and strengthened by the equity of the case being, also, with him.

If the plaintiff has made out a legal title in himself, there can be no objection to his maintaining this action. *Spon* was in possession as his tenant, under a lease; and the defendants, previous to the time when the waste is alleged to have been committed, took from *Spon* an assignment of his lease; neither this lease, nor the assignment, is particularly set out in the case, but no objection appears to have been made, upon the trial, to the competency or sufficiency of the proof of them. We must, therefore, consider the defendants as the assignees of the plaintiff's tenant, and, of course, liable to this action. (2 *Saund.* 252., note.) We are, accordingly, of opinion, that the plaintiff is entitled to judgment.